IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., | |
| Plaintiff, | 8:17-CV-401 |
| vs. | |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the defendant's partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). That motion will be granted.

## BACKGROUND

The parties to this dispute are Applied Underwriters, Inc., and Sedgwick Claims Management Services. The plaintiff, Applied, owns two insurance companies that provide workers' compensation plans nationwide. Filing 1-1 at 1. Sedgwick, the defendant, is a third-party administrator of workers' compensation claims. Filing 1-1 at 1.

In 2016, Applied entered into a one-year service agreement with Sedgwick, in which Sedgwick agreed to adjust workers' compensation claims on Applied's behalf. *See* filing 1-1 at 2, 12-13. At some point during that contractual term, however, Applied says that Sedgwick began soliciting its employees. Filing 1-1 at 4. Specifically, Applied claims that Sedgwick's recruiters "repeatedly" contacted its employees "in an effort to terminate their employment with [Applied] and become claims adjusters [for Sedgwick]." Filing 1-1 at 43. As a result of those efforts, Applied says that

seven of its former claim adjusters terminated their employment and accepted similar positions with Sedgwick. Filing 1-1 at 4.

According to Applied, each of those seven employees had gone through an "extensive proprietary training program" with Applied in which they had been taught "special skills and knowledge." Filing 1-1 at 3. And each employee had signed a "Proprietary Information Agreement," which generally requires the signatory to hold Applied's proprietary information "in the strictest of confidence[.]" *See* filing 1-1 at 4, 54. Notwithstanding those agreements, Applied alleges that its former employees transmitted certain proprietary information to Sedgwick at Sedgwick's request, and that Sedgwick is currently using that information to advance its business operations. Filing 1-1 at 5.

Applied has sued Sedgwick asserting claims for, among other things, breach of fiduciary duty, tortious interference with contract, unjust enrichment, and breach of the covenant of good faith and fair dealing. Filing 1-1.[1] Sedgwick now moves to dismiss those claims (filing 5), arguing that Applied has failed to state a claim upon which relief may be granted.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must

---

[1] Applied has also sued Sedgwick for conversion; unfair trade practices; and alleged violations of the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501 *et seq*. Filing 1-1 at 7-8. Those claims, however, are not at issue here.

accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

Several of the claims at issue here relate to, or derive from, the two contractual agreements referenced above. The first agreement is the parties' 2016 service contract, in which Sedgwick agreed to adjust workers' compensation claims on Applied's behalf. *See* filing 1-1 at 12. As discussed below, Applied argues that the agreement created a confidential or fiduciary relationship between the parties, which Sedgwick allegedly breached in soliciting Applied's employees. Filing 1-1 at 6. It also argues that Sedgwick, in engaging in a "premeditated raid of Applied's claim adjusters," breached the covenant of good faith and fair dealing. *See* filing 1-1 at 3, 9.

Applied also cites its "Proprietary Information Agreement." Filing 1-1 at 56. That agreement, generally speaking, requires employees to maintain confidentiality with respect to the company's proprietary information. *See* filing 1-1 at 4, 54. According to Applied, Sedgwick tortiously interfered with that contract by, among other things, encouraging Applied's employees to "obtain, transmit, communicate and deliver to Sedgwick Applied's proprietary information concerning workers' compensation forms, procedures, methodologies, information, expert lists and training." Filing 1-1 at 5.

Applied's remaining claim for unjust enrichment is unrelated to either contractual agreement. There, Applied claims that Sedgwick was unjustly

enriched by hiring employees who had already undergone extensive training while employed at Applied. Filing 1-1 at 7. By doing so, Applied alleges, Sedgwick has built an experienced team of adjusters "without the necessity of expending significant monies or time[.]" Filing 1-1 at 7.

## 2016 Service Agreement

### *Breach of Fiduciary Duty*

Applied alleges that Sedgwick breached its fiduciary duty to Applied by "soliciting and hiring Applied's well-trained claims adjusters." Filing 1-1 at 6. To state a claim for relief on those grounds, Applied must sufficiently allege (1) that Sedgwick owed Applied a fiduciary duty, (2) that Sedgwick breached the duty, (3) that the breach was the cause of the injury to Applied, and (4) that Applied was damaged. *See McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 790 (Neb. 2011). Sedgwick moves to dismiss at step one, arguing that it does not (and never did) owe a fiduciary duty to Applied. Filing 6 at 7.

A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Gonzalez v. Union Pacific R.R. Co.*, 803 N.W.2d 424, 446 (Neb. 2011). Such a relationship exists here, Applied argues, because Sedgwick—in executing the 2016 service agreement—agreed to provide certain insurance-related services on Applied's behalf. In other words, Applied points to the 2016 service agreement itself as the source of the fiduciary relationship. *See* filing 10 at 7.

But Applied's argument is misplaced, and its claim will therefore be dismissed. Indeed, the express terms of the contract make clear that "the only relationship among the parties shall be that of independent parties to a contract." Filing 1-1 at 20. And there is nothing in the agreement to suggest that Sedgwick assented to some general fiduciary duty that extends beyond

the obligations set forth in the contract. Simply put, the parties' general service agreement did not create the type of "confidential relationship" that, under normal circumstances, gives rise to a fiduciary duty. *See Gonzalez,* 803 N.W.2d at 446. Accordingly, because no fiduciary duty exists, Applied's claim will be dismissed with prejudice.

*Covenant of Good Faith and Fair Dealing*

Applied also claims that Sedgwick, in allegedly soliciting and hiring Applied's former claim adjusters, breached the covenant of good faith and fair dealing. Filing 1-1 at 9.

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *Spanish Oaks, Inc. v. Hy-Vee, Inc.,* 655 N.W.2d 390, 400 (Neb. 2003). A violation of the covenant occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract. *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 674 (Neb. 2011). The covenant is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose. *Spanish Oaks*, 655 N.W.2d at 400.

Here, dismissal is warranted because, as Sedgwick correctly points out, the 2016 service agreement says nothing about the parties' ability (or inability) to hire each other's employees.[2] In other words, the implied

---

[2] The Court is aware of Applied's argument that the contract was modified by a letter it received from Sedgwick, in which Sedgwick assures Applied that it has "taken steps to ensure its recruiters do not unilaterally contact Applied Underwriters Inc.'s current employees." Filing 10 at 16; *see* filing 1-1 at 5-6. But that allegation (*i.e.*, that the letter

covenant is not invoked in this case as a means of protecting express covenants or promises *in the contract*. Rather, Applied cites the covenant of good faith and fair dealing in connection with an interest (*i.e.*, maintaining its workforce) that is not—on these facts—"directly tied to the contract's purpose." *Spanish Oaks*, 655 N.W.2d at 400. For that reason alone, the claim must be dismissed. *Id.*

Even assuming, however, that Applied's claim is tied to a specific provision of the contract, it has not alleged how (or if) Sedgwick's conduct violated, nullified, or impaired a specific benefit of the agreement. *See RSUI Indem. Co.*, 810 N.W.2d at 674. Without such allegations, and in light of the deficiencies discussed above, Applied's claim will be dismissed with prejudice.

## Proprietary Information Agreement

### *Tortious Interference*

As noted above, each of Applied's seven former claim adjusters signed a "Proprietary Information Agreement" when they began their employment with Applied. Filing 1-1 at 46-59. That agreement, generally speaking, requires employees to hold Applied's proprietary information "in the strictest of confidence." *See* filing 1-1 at 58. According to Applied, Sedgwick tortiously interfered with those agreements by soliciting and hiring its employees, and using Applied's confidential information to advance its business interests. Filing 1-1 at 6.

A claim for tortious interference with a contract requires (1) a valid contract, (2) knowledge by the defendant of the contract, (3) an unjustified intentional act of interference on the part of the defendant, (4) proof that the

---

constitutes a modification of the parties' agreement) appears nowhere in the complaint, and thus cannot—and will not—be considered here.

- 6 -

interference caused the harm sustained, and (5) damage to the plaintiff. *See Vande Guchte v. Kort,* 703 N.W.2d 611, 623 (Neb. Ct. App. 2005).

Sedgwick moves for dismissal on several grounds. First, Sedgwick argues that Applied's claim necessarily fails because "the Employment Agreement is not a valid contract." Filing 6 at 8. To support that argument, Sedgwick points to the following provision of the agreement which, it argues, amounts to an unlawful restraint on trade:

> As a result of [Applied's proprietary information] and other personal relationships fostered between Employee and other Company employees with whom Employee may have contact, **Employee after Employee's employment with Company ends, will not directly or indirectly, whether for Employee or any third party solicit or contact any current employee of the Company for any business purpose**, including but not limited to employment nor shall Employee share or disseminate any listing of Company employees. It is expressly understood and agreed that Employee may maintain existing friendships, and may continue to communicate with any employee of Company so long as such communications do not in any way disparage Company or address issues concerning the business of the Company or anything related to Employee's employment with Company.

Filing 1-1 at 52; filing 6 at 9 (emphasis added).

The Nebraska Supreme Court has not yet considered the enforceability of a non-recruitment clause. But this restriction shares a similar purpose with more commonplace covenants not to compete and other provisions

partially restraining trade—namely, to prevent former employees from soliciting the employment of Applied personnel on behalf of a competitor. As such, the Court looks to Nebraska's three-part test for determining the provision's validity. *See Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121, 130 (Neb. 2014). Pursuant to that test, a partial restraint on trade is valid if it is (1) not injurious to the public; (2) no greater than reasonably necessary to protect the employer in some legitimate business interest; and (3) not unduly harsh and oppressive on the party against whom it is asserted. *H & R Block Tax Servs. v. Circle A Enters.*, 693 N.W.2d 548, 553 (Neb. 2005)).

After reviewing the agreement, and considering the parties' arguments, the Court is not convinced that dismissal is warranted on these grounds. Indeed, the validity of such provisions can be fact-specific, so courts look not only to the terms of the provisions, but to the evidence adduced. *See Gaver*, 856 N.W.2d at 132; *H & R Block*, 693 N.W.2d at 556-57; *Polly v. Ray D. Hilderman*, 407 N.W.2d 751, 755 (Neb. 1987); *Boisen v. Petersen Flying Servs.*, 383 N.W.2d 29, 32-35 (Neb. 1986). And that evidence typically includes detailed testimony regarding the nature of the former employee's job responsibilities, *see Boisen*, 383 N.W.2d at 32, and the employer's justification for the contested restraint, *see H & R Block*, 693 N.W.2d at 556. Here, given the preliminary nature of this case, no such evidence exists—rather, the Court is confined to the plaintiff's complaint and the exhibits necessarily embraced by it. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Accordingly, because facts are yet to be developed on this issue, the defendant's motion to dismiss will be denied on those grounds.

There is a deficiency in Applied's complaint, however, that requires dismissal: Applied does not allege that Sedgwick, at the time it solicited and hired the claim adjusters, knew of the Proprietary Information Agreement.

Accordingly, because Applied has not satisfied its *prima facie* burden, *see Vande Guchte,* 703 N.W.2d at 623, its tortious interference claim will be dismissed. However, the Court will grant Applied leave to replead this claim with greater particularity.

## Remaining Claim

*Unjust Enrichment*

Applied has sued Sedgwick for unjust enrichment, claiming that the defendant "obtain[ed] the benefit of Applied's experienced workers' compensation claims adjusters without the necessity of expending significant monies and time[.]" Filing 1-1 at 7. That claim is premised on the "comprehensive training" programs that Applied provides to each of its employees—training that, Applied suggests, its former claim adjusters now utilize in their employment with Sedgwick. filing 1-1 at 4.

The Court assumes, as Applied asserts here, that Sedgwick benefits from the experience and knowledge that its current employees gained while working for Applied. But the fact that a recipient has obtained a benefit without paying for it "does not itself establish that the recipient has been *unjustly* enriched." *Kalkowski v. Nebraska Nat'l Trails Museum Found., Inc.*, 862 N.W.2d 294, 301-02 (Neb. 2015) (emphasis added) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, comment a. (2011)). Rather, to state a viable claim, the benefit conferred must be "something in which the claimant has a legally protected interest, and it must be acquired or retained in a manner that the law regards as unjustified." Restatement (Third) of Restitution and Unjust Enrichment § 2, comment a. (2011).

The Court, in applying those principles to the facts of this case, will grant Sedgwick's motion to dismiss. Indeed, the transfer of experience and knowledge as alleged in Applied's complaint is an "advantage[] of

civilization," not unjust enrichment. Restatement (Third) of Restitution and Unjust Enrichment § 2, comment a. (2011). As such, it cannot be said that Sedgwick, in hiring well-trained personnel, acquired a benefit that the law regards as unjustified. Accordingly, the Court will grant Sedgwick's motion on these grounds, and Applied's unjust enrichment claim will be dismissed with prejudice.

## CONCLUSION

For those reasons, the Court will grant Sedgwick's partial motion to dismiss. However, Applied will be granted leave to replead its tortious interference claim (and that claim only) with greater particularity.

IT IS ORDERED:

1. Sedgwick's partial motion to dismiss (filing 5) is granted. Applied's claims for breach of fiduciary duty; breach of the covenant of good faith and fair dealing; and unjust enrichment are dismissed with prejudice.

2. On or before May 18, 2018, Applied may file an amended complaint, if it chooses, repleading its tortious interference claim with greater particularity.

3. Sedgwick shall file a responsive pleading on or before June 1, 2018 or within 21 days after the filing of Applied's amended complaint, whichever is later.

Dated this 4th day of May, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge